Good morning, Ms. Valliere. Good morning, Your Honor. And may it please the Court, Barbara Valliere on behalf of the United States, I'm going to try to reserve two minutes for rebuttal. This Court should reverse the District Court's ruling in this case for two different reasons. First and foremost, there was no Fourth Amendment violation. But second, if this Court does agree with the District Court and concludes that there was a Fourth Amendment violation, the record shows that the probation officer's conclusion that Mr. Silva had a warrantless search condition was objectively reasonable. And thus, this Court should reverse the District Court's erroneous conclusion that the good faith exception does not apply. I'd like to address the Fourth Amendment issue first and then reserve some time to discuss the good faith issue. With respect to the first issue, whether or not there was a Fourth Amendment violation in this particular case, the government is of the view that there's basically two arguments that refute the District Court's conclusion. The first is, and probably most prominently, that any common-sense reading of this record and of this of the subject minute order, which is the 2003 minute order revoking and reinstating the probation, would lead to the conclusion that Mr. Silva's probation revocation or, excuse me, his probation search condition was not extinguished at that time, and therefore, it was in existence in 2009. Kennedy, you said that the 2003 order revoked and reinstated. I thought it was revoked summarily and it was reinstated only in 2003. No, that's not correct, Your Honor. It was revoked summarily in 2000, is what the record shows. He was returned for the violation. There was a hearing on his probation violation, and then in 2003, it was revoked and immediately reinstated and extended by two years. You mean it was at the same time on September 2003 when it was revoked, it was reinstated at the same hearing? In September of 2000. No, Your Honor. In May of 2003. It was, and again, this is at the excerpts of Record 121, 122. It was revoked in September of 2003, right? It was again revoked in 2003, Your Honor. So there's several different revocations. The significant one for the district court here was the May 2003 revocation and reinstatement of probation. In September of 2003, the court issued a bench warrant. It summarily revoked the probation at that time. And that was not reinstated there? No, because that was not returned until 2009. The May reinstatement you're talking about. Yes, it's the May reinstatement. There was a summary revocation of probation in 2000. Correct, Your Honor. And then there was another revocation of a revocation? No. In May of 2003? No, Your Honor. There was a summary revocation in 2003. The defendant failed to appear for, at that time, for a probation revocation hearing, and that's why there was a summary revocation. But it was already revoked. Not at that time, Your Honor. In 2003, the defendant was placed on probation in 1997, and a list of conditions were there and stated, including the search condition. In 2003, I mean, excuse me, in 2000, the probation officer sought revocation or filed a petition for violation. The defendant failed to appear at that hearing, and at that hearing, the judge summarily revoked probation. Stop there. Yes. Stop action. Probation is revoked summarily. At that point, yes, Your Honor. What happened between 2000 and 2003 to reinstate probation? Anything? Nothing during that period of time. So it was revoked. So then in 2003, there's another revocation and reinstatement? There was, at that time, a hearing on the revocation. The bench warrant was returned. The defendant had his revocation hearing at that time. The defendant admitted the violations, and then the court revoked permanently his probation and immediately reinstated it for two additional years. With some additional sentencing enhancement? That's correct, Your Honor. That's the critical document that we're talking about here, which is the May 2003 revocation where the court revoked and reinstated probation, and the argument the order of the district court in this case was extinguished all prior probation conditions. And the reason my argument is that's not a common-sense reading of this particular record, and the reason for that is there are several reasons for it, the most important of which is the defendant, the court at that time, instated a 30-day jail sentence, which was a modification of the earlier suspended 45-day sentence, but did nothing else. It said nothing else with regard to the conditions of probation. Wait a minute. Let's step back. Didn't they also say that there would be no work furlough? Yes, correct, Your Honor. There would be no home detention? That's correct, Your Honor. You take those to be sentencing enhancements or changes, but not probation changes. That's correct, Your Honor. They also told him that he had three days to appear before a parole officer. Upon release, yes, Your Honor. Upon release. You consider that not to be a modification of his parole? No, I think that, Your Honor, those are modifications of the earlier probation terms in 1997. However, the court, in fact, expressly said modified sentence elements are entered. But the word, the use of the word modified in this context demonstrates that the court was modifying an earlier document, which is the document that contained the probation conditions that was going to guide his probation for the following two years. Let me follow there, because in Frady's, if there are any modifications to the probation conditions, applying that old Latin saying, expressio unias, the court held that if there's any modification, then that's the only modification there is, and the prior conditions are all gone. Do you want to tell us why the order to appear before the parole officer is not a, quote, modification of parole? Your Honor, I think that that's, that was simply a reinstatement of the earlier condition, which was upon his release he would report to the probation office. But if the district court's conclusion in this particular case that this, the 2003 reinstatement did not carry with it the earlier conditions is correct, that means the defendant had no conditions of probation other than reporting to the probation officer once to guide the entire few years that he was going to be on probation. I see that my time is running down, so I would like to just switch very quickly to the good faith argument. We're very strongly of the view here that obviously that the district court erred in its conclusion that the probation was reinstated, was not, the probation condition was not in existence since 2009. But most critically, the district court not only suppressed the evidence in this case, it also wholesale rejected the government's good faith argument. The facts in this case are that the Salinas police officers, and there's really no dispute about the fact that Salinas police officers reached out to the probation officer to see whether or not he had a probation condition. They were assured by the probation officer that, in fact, he did. At that time, and obviously from the record and also from the arguments that the district court made, the district court did not make a reasonable decision on the part of the probation officer given the record of his probation in the state court. The district court, however, when the government made its good faith argument that, in fact, it should apply good faith and not suppress the evidence, rejected the argument under, one, the theory that California law applies to the exclusionary rule, which was incorrect. And secondly, rejecting the notion that categorically the good faith doctrine can apply in a circumstance in which the probation officer had made a mistake when they're acting as an adjunct of law enforcement. The Supreme Court's decision in Herring directly addresses this question and says that the good faith exception does apply in cases in which the court, in which they're to police employees as well as to neutral magistrates or neutral third parties. For that reason, the district court's conclusion that good faith does not apply in this particular case is flatly wrong and should be rejected. In addition, the record here firmly establishes that the decision that was made by the probation officer was objectively reasonable, and therefore, this is exactly the type of case in which the good faith doctrine would apply even if you conclude that there was a Fourth Amendment violation. If I would just like to reserve the remainder of my time for rebuttal, if that's possible. Thank you. Good morning, Your Honors. My name is Bruce Funk. I represent Mr. Silva. The issue, the two issues here are very clear. The document provided to the district court regarding the revocation of probation in the May 2003 hearing clearly says that Mr. Silva is to serve 30 days in the county jail. That in and of itself is a modification of probation. He had already served. Pardon me, counsel. Yes. Do you have any case that says that? Because it sounds to me like 30 days in county jail is a sentencing modification, not a probation modification. The – in our brief, and I'd have to pull it out, in our brief, we outline the statute and that it indicates that when imposition of sentence is suspended and a person is placed on probation, the jail sentence is a condition of probation. And it is not a sentence for the underlying crime. It is a sentence of probation. So Silva was first sentenced to county jail with county jail suspended as a condition of probation? No. County jail was not – the imposition of sentence was suspended. He was granted – The execution of the imposition. Right. Thank you. And he was granted probation. And as conditions of probation, he was granted probation because he served county jail. He was granted probation because he served county jail. And there was a laundry list of things needed to do including have a search condition, which he accepted. And he spent the 45 days in county jail the first time around. The record would suggest that he did because on the violation of probation petition, it did not indicate that he failed to serve his jail sentence. It was that he failed to enroll. Your position is that when they gave him an additional 30 days, that was a condition of probation because the sentence he'd originally gotten, sentence suspended, ISS, he'd already served. Correct. And then when they extended probation for an additional two years, that again is a modification of his original probation sentence of three years, of which a defendant needs to acquiesce a second time. A defendant could opt, say, I don't accept those conditions of probation when they were extended, or I don't accept those conditions of probation of 30 days. Do what you want to me, but I'm not going to acquiesce. And then when they directed him that when you serve this sentence, you're not going to be able to do home confinement. You're not going to be able to do work furlough. Those are all options of how you can serve a sentence. They took all those options away from him. I think the significance of this document, Your Honor, is in order to determine whether the original terms and conditions of probation still exist, the magic words are probation is reinstated on original terms and conditions. As a further condition of probation, you will now do these things. And that is what would be listed on a document indicating that the original terms and conditions are reinstated and here are the other things a defendant must do. That's exactly what happened in Pipitone. In Pipitone, the term was all terms and conditions to remain in full force and effect. Correct. In this case, the only evidence before the district court was that May 2003 revocation and then reinstatement, which says that probation is reinstated, is extended for two years, you have to do 30 days, you can't serve it that way, and you have to report to probation. The fact that there may have been other terms, one can argue there should have been other terms imposed, is really immaterial when you look at what was actually done. What do you think the term reinstatement means? In this case, what reinstatement means is the court is allowing the defendant to go back on a probation grant. The original probation grant. Not no. It's only the original probation grant if the court is reinstating them on the original terms and conditions, not if the court. I don't know what it, maybe I'm missing something here, but when I was a district judge and we, and I, and I had people come in, I reinstated the original probation. I might have, I may add some things to it, but re-estatement of probation isn't out of the air. It's not out of the air. There's a probation order earlier that I imposed. I don't quite, I don't quite get your meaning that, that when you reinstate in probation, that automatically erases the conditions of the original probation. It does not automatically, if, if, if in this case, if the district court or if the State court judge just said I reinstate you to probation and said nothing else, he's on his original terms and conditions because there's been no modifications. But Freitas clearly holds that if you reinstate somebody on probation and you give them a modified list of new conditions, that those are the conditions that are in place, and unless you say you're on your original terms and conditions, the modifications are what your terms are. Because the defendant has to have the opportunity to acquiesce to all of the conditions that are being imposed. And if, if you just reinstate and say I'm reinstating you on probation, the defendant by accepting your reinstatement is acquiescing to the conditions he'd already acquiesced. But in this case, when they modify it and say these are your conditions, those are the conditions he's acquiescing to and nothing else. And so it doesn't make any difference whether the trial judge says these are the only conditions of probation? No, not under, not under, not under Freitas's analysis. So it just I, this is a California State law, I guess, huh? Correct. And, and if I, if I could turn quickly to the good, the good-faith argument, and I, I think that this is, this is real important because the, obviously the court made a factual finding that the search clause, or the court made a factual finding that the conditions were modified without restoring the original terms and conditions. He then looked at Freitas and applied the appropriate law and said, okay, the search condition does not apply. So we now get to the good-faith argument. If you look at the, I think it's the declaration provided by the prosecution in the brief by the supervising deputy probation officer. I think it's at ER 106, but it was Ms. Hatton. This is what, this is what's scary. In her declaration, she says, I looked at this document. It doesn't specifically say there's no search condition. So therefore, the search condition still applies. That means she is either ignoring Freitas, that's been the law of the land for 31 years, or she doesn't understand Freitas, and she's a supervising probation officer. And when there is a law violation, when, when there's an established rule in law, and the law enforcement officer should know that, and a probation officer should know what the law of the land is for probation, and they then give erroneous information because they don't understand a well-established law, that's exactly what the exclusionary rule's for. And Leon has said that you have to look at all the officers involved, not just the one that did the warrant, but the one that gave the information for the warrant. And in this case, you have to look at all the law officers involved. The probation officer, who clearly didn't understand what Freitas meant, has a document that doesn't say original terms and conditions restored, has a document that's modified probation, and they're just following their own law. And that is exactly why there needs to be the exclusionary rule needs to be applied in this case. If there's any further specific questions, I'll be happy to do that. Kennedy. Did the declaration say that based on her experience or his experience and practice, all probationers in California have these conditions regarding search? No. She just said, I reviewed the file, and upon my review of the file, there's nothing in there that says the search condition's been removed. But the search condition initially imposed in 1996. Right. Had been removed in the 2003. All right. Thank you very much. Can we have a good-faith, incorrect reading of the law, Ms. Valier? Actually, Your Honor, I think you probably cannot in most circumstances. I do think in this particular case, however, that there's an overstatement of what the law was. The Freitas case was a First District case, a court of appeal case, where I think the Court simply said that if you have a situation in which a probationer's probation conditions under revised form and signed, and he signs those conditions under the expressed exclusion rule, that that document is deemed to be complete. The California Supreme Court after that in the People v. Johnson distinguished the Freitas case on precisely the grounds that it was a revised form that was given to the defendant in that particular case that he signed and accepted those probation conditions. That's a far cry from what we have in this particular case, Your Honor. Can't this case fall between Freitas and Pipitone? It does a little bit, Your Honor, because it wasn't summary revocation and there wasn't a term in our order. It doesn't specifically say the minute order on the same terms. But everything else in the record supports, including the fact that the probation officers and the court that was supervising probation in 2003 were under the assumption that the probation conditions most pointedly, the domestic violence condition, which was not restated, but yet two months later the probation officer actually tried to violate him for failing to comply with that condition in 2003. But isn't that required by California state law? Yes. So whether or not it's in the condition of probation or not, it's a requirement of California law. It is a requirement of California law, but under the defendant's argument, if it wasn't restated, he could not be bound by it regardless of whether or not it was mandatory. And the court, I think what the court has to look at here is that the conditions, again, were not changed. There was a modification of the sentencing elements or a condition of probation that he served 30 days, but if their reading of the record is correct, then he had no terms of condition that were going to guide him for the following two years. Well, pardon me, but Mr. Funk points out that the May 2003 order not only gave him an extra 30 days as a condition of probation, but also extended probation for two years. Why aren't those modifications of probation? Well, it was a reinstatement. The court deemed it a reinstatement of probation, Your Honor, and an extension by two years. I agree with you that that extension is not – it's not a condition. It's just an extension of probation. On the 30 days, our argument would be that it's just a slight modification of the prior – of the prior order. Slight is in the eyes of the beholder. I agree with you, Your Honor. Two years of probation may not be so slight to Mr. Silva. But I don't think that's a condition of probation, Your Honor. I think that's – he extended probation. That was not the condition by which he was going to serve the terms and conditions by which he would serve that probation. It was just an extension. But I do want to go back and answer the first question that the Court asked me, which was does it apply to mistakes of law. I think the Supreme Court's case last term, the good faith doctrine, really only applies to mistakes of law. The Davis case clearly says it does apply to mistakes of law. In that case, of course, it was binding circuit precedent that the police officers were relying on. But what you have here, and I think this is critical for the analysis in this case, is that I don't think there's any governing law that the probation office did not obey at the time they looked at the forms in this particular case and made a determination that, in fact, that search probation condition had survived. And this Court's analysis on whether or not the good faith doctrine applies to mistakes of law has always said that it does not apply when officers, law enforcement officers, are not acting in accordance with governing law, which has always signaled recklessness. And in this case, I think you could search the record high and low and not find any evidence that the probation officers or the police officers in this case acted in a kind of reckless or deliberate manner. Kennedy. The probation officer, taking Judge Bennett's, I think, opposite analysis, said, at worst, says this case falls between Freitas and Pipitone. And, therefore, I think it's closer to Pipitone than it is to Freitas. And, therefore, the condition of the probation still exists. At the very worst, Your Honor. That's what the probation officer did in this particular case, which is not reckless, deliberate, or negligent in any manner. All right. Thank you very much for your argument. Thank you, Your Honor. And the case of U.S. v. Silva is submitted. And we will go to the next case. Well, U.S. v. Jauregui Barajas is submitted on the briefs.
judges: Bennett, Wallace, Bea